IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re AMERICAN BUSINESS FINANCIAL | : | MASTER FILE NO. 05-0232 |
| SERVICES, INC. NOTEHOLDERS | : | |
| LITIGATION | : | |
| | : | |
| | : | |
| JOHN A. MALACK; MICHAEL R. ROSATI; | : | CASE NO. 08-0784 |
| VIRGIL MAGNON; S.S. RAJARAM M.D.; | : | |
| HAYWARD PEDIATRICS, INC.; AND | : | |
| HENRY MUNSTER | : | |
| | : | |
| v. | : | |
| | : | |
| BDO SEIDMAN, LLP | : | |

O'NEILL, J.                                                        AUGUST 11, 2008

MEMORANDUM

On February 15, 2008 plaintiffs John A. Malack; Michael R. Rosati; Virgil Magnon; S. S. Rajaram, M.D.; Hayward Pediatrics, Inc.; and Henry Munster filed a class action complaint alleging defendant BDO Seidman, LLP violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78 and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Before me now are defendant's motion to dismiss plaintiffs' class action complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiffs' response, and defendant's reply.

BACKGROUND

Plaintiffs are purchasers of notes, subordinated debt securities, subordinated money-market notes and subordinated debentures (collectively, the "Notes") issued by American Business Financial Services, Inc., a diversified financial services organization, during the class

period of October 3, 2002 to January 20, 2005.[1]  According to plaintiffs' complaint during the

class period ABFS was in the business of originating, buying and securitizing or selling home

mortgage loans and business loans.

Defendant BDO, a firm of certified public accountants and auditors that provides a

variety of accounting, auditing and consulting services, served as ABFS's auditor and principal

accounting firm during the class period.  Pursuant to its agreements with ABFS, defendant was

required to audit ABFS's financial statements in accordance with generally accepted auditing

standards ("GAAS") and report its results to ABFS, its board of directors, its audit committee

and the members of the investing public, including plaintiffs.  During the class period defendant

issued unqualified opinions on ABFS's financial statements for the 2001, 2002 and 2003 fiscal

years.  These opinions were included in two Registration Statements of ABFS that became

effective on October 3, 2002 and November 7, 2003.

Plaintiffs allege that to raise capital during the class period ABFS used a financing

technique known as a securitization.  In each of its securitizations ABFS transferred a pool of

mortgage loans to a trust in exchange for certificates, notes or other securities issued by the trust

that were then sold to investors for cash.  Plaintiffs allege that ABFS would often retain the rights

to service the loans for a fee and would retain an interest in the cash flows generated by the

securitized loans (called an "interest-only strip" or "IO strip").  Because the IO strips represented

---

[1]On January 21, 2005 ABFS filed a petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.  See In re ABFS, Inc., et al. (No. 05-10203) (MFW).  On April 1, 2005 the Bankruptcy Court authorized the Creditors' Committee to retain Special Litigation Counsel to investigate potential claims on behalf of ABFS noteholders.  On April 4, 2005 ABFS announced that it intended to wind down its operations and dispose of its assets through a Chapter 11 plan of liquidation.  On May 17, 2005 the Chapter 11 bankruptcy proceeding was converted to a Chapter 7 liquidation.

expected future cash flow, if borrowers did not make payments the value of the IO strips declined.  According to plaintiffs IO strips and servicing rights were important assets and a major source of income for ABFS throughout the class period, representing approximately 58.48 percent and 51.60 percent of ABFS's assets as of year end in 2002 and 2003, respectively.

During the class period ABFS represented in securitization documents that the pools of mortgage loans contained not more than a specified percent of delinquent and foreclosed loans. If delinquencies and foreclosures exceeded the specified rate in any pool ABFS would be in default.  Further each non-performing loan decreased the total cash flow from and the servicing rights to the pool.  Plaintiffs allege that ABFS fraudulently altered their loan delinquency ratio by engaging in improper practices to lower artificially the number of loans that were reported as delinquent.  For example, plaintiffs allege that though "delinquent loans" were defined as those loans more than thirty days past due, ABFS would label loans as "delinquent" only after they were sixty or ninety days past due.  Plaintiffs further allege that ABFS engaged in re-aging techniques such as forbearance and deferment agreements in order to keep loans from being counted as delinquent.

According to plaintiffs investment banks refused to continue securitization of pools of ABFS mortgages beginning in the June 2003 quarter.  As a result ABFS began selling the mortgages it originated for cash on a whole loan basis.  ABFS obtained the money it needed to finance its loans to home buyers or business owners by borrowing from institutions, such as banks and insurance companies, and by selling hundreds of millions of dollars of Notes.  ABFS sold the Notes promising to pay interest at rates well above prime and without involvement of underwriters or brokers.  The Notes were non-transferrable except with ABFS's permission.

3

Plaintiffs allege that in purchasing Notes from ABFS during the class period they relied upon ABFS's 2002 and 2003 Registration Statements and Prospectuses, which included defendant BDO's audit reports of ABFS.  GAAS provide that an auditor's report must state whether a company's financial statements are presented in conformity with generally accepted accounting practices ("GAAP").  In the audit opinions included in ABFS's 2002 and 2003 Registration Statements BDO opined:

> We have audited the accompanying consolidated balance sheets of American Business Financial Services, Inc. and subsidiaries as of June 30, 2002 and 2001 [in the 2003 Registration Statement: June 30, 2003 and 2002] and the related consolidated statements of income, stockholders' equity, and cash flow for each of the three years in the period ended June 30, 2002 [in the 2003 Registration Statement: June 30, 2003].  These financial statements are the responsibility of the Company's management.  Our responsibility is to express an opinion on these consolidated financial statements based on out audits.
>
> We conducted our audits in accordance with auditing standards generally accepted in the United States of America.  Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement.  An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements.  An audit also includes assessing the accounting principles used and financial statement presentation.  We believe that our audits provide a reasonable basis for our opinion.
>
> In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the consolidated financial position of American Business Financial Services, Inc. and subsidiaries as of June 30, 2002 and 2001 [in the 2003 Registration Statement: June 30, 2003 and 2002] and the consolidated results of their operations and their cash flow for each of the three years in the period ended June 30, 2002 [in the 2003 Registration Statement: June 30, 2003] in conformity with account principles generally accepted in the United States of America.

Plaintiffs allegedly depended on the reliability of BDO's opinions that ABFS's financial statements were fairly stated in accordance with GAAP.  Plaintiffs allege that they could not and

would not have purchased Notes in the absence of these published opinions of BDO.

Plaintiffs allege that BDO, in so certifying ABFS's financial statements, materially misrepresented ABFS's financial condition despite knowing or recklessly disregarding: (1) ABFS's internal accounting controls were materially deficient and inadequate, and could not be relied upon for the accurate reporting of financial information; and (2) ABFS violated GAAP and fraudulently manipulated its reported earnings and assets by making unsupportable assumptions in connection with the valuation of IO strips and servicing rights.  According to plaintiffs' complaint BDO violated GAAS by: (1) failing to exercise due professional care in the performance of its audits; (2) failing to maintain its independence as an auditor; (3) failing to consider properly fraud risk; (4) failing to obtain sufficient competent evidential matter concerning the assertions in ABFS's financial statements; (5) failing to use the work of valuation specialists; and (6) over-relying on management representations.

Plaintiffs moreover allege that BDO acted with scienter throughout the class period because it either had actual knowledge that it made misrepresentations or omissions of material fact with respect to ABFS's financial condition or acted with reckless disregard for the truth by failing to ascertain or disclose available facts regarding ABFS's financial condition.

Plaintiffs allege that BDO's scienter is supported by its knowing or reckless disregard for red flags such as the mid-audit resignation of its predecessor auditor, Ernst & Young.  In 2001 ABFS terminated BDO as its auditor and retained Ernst & Young to perform a fiscal year 2001 audit.  Ernst provided no final opinion on ABFS's financial condition, instead resigning mid-audit.  A BDO memorandum discussing Ernst's resignation noted that at the time of its resignation Ernst identified "four potentially large unresolved audit issues" involving: (1) the

discount rate; (2) an anomaly in the amortization of deferred selling costs; (3) a key assumption

in calculating the servicing asset – the projected future service fees; and (4) ability to collect fees

receivable.  Plaintiffs' complaint alleges that BDO failed to undertake critical assessment of the

audit evidence with respect to these issues.  Plaintiffs further allege that BDO failed to inquire

into the reasons for Ernst's mid-audit resignation and that an adequate or reasonable investigation

would have raised questions regarding ABFS's management integrity, financial condition,

controls or reporting.

Other red flags cited in plaintiffs' complaint were: (1) strong comment letters from the

SEC directed at the ABFS,  ABFS's outstanding matters with the Pennsylvania Securities

Commission and subpoena of ABFS records by the United States Attorney with respect to

published interest rates; (2) recurring negative cash flows from operations since 1996; (3)

ABFS's poor liquidity and dependence on debt financing; (4) according to ABFS's 2003 Form

10-K more than 80% of securitization gains were based on estimates of the fair value of retained

interests; (5) ABFS's management's insistence on a material decrease in the discount rate

applicable to IO strips from 13% to 11% – a rate lower than the bottom end of ABFS's peer

range – in 2003 despite conflicting trends in successive quarters beginning in the second quarter

of fiscal 2002; (6) domination of ABFS management by a small group of individuals; (7) ABFS's

consistent reporting of delinquency rates far lower than rates generally prevailing in the industry;

(8) the misallocation of 4.8 millon dollars into ABFS's operating cash accounts as opposed to

segregated escrow cash accounts; (9) material unreconciled differences in ABFS's main cash

clearing account; (10) ABFS's projection of future servicing fees which exceeded the present rate

and thus materially inflated the servicing assets; and (11) ABFS's miscalculation with respect to

a particular securitization, 2002-2, which led to material overvaluation of IO strips.

Plaintiffs allege that BDO's failure to investigate red flags indicates a complete failure to maintain its independence as an auditor.  Because it acquiesced to and relied excessively on representations of ABFS's management, BDO failed to discover or disclose deficiencies of ABFS's internal auditing controls and financial assumptions despite its access to ABFS's financial records.  BDO further failed to employ independent valuation specialists during their audits of ABFS.  In sum plaintiffs allege that BDO's auditing practices were so accepting and uncritical of ABFS that the audits amounted to no audit at all.

Plaintiffs allege that BDO's scienter also may be inferred from its financial incentive to overlook ABFS's violations of GAAP.  Due to the lucrative nature of its relationship with ABFS, BDO possess a motive to acquiesce to management and fail to disclose its concerns about ABFS's financial condition in its audit reports.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In ruling on a 12(b)(6) motion, I must accept as true all well-pleaded allegations of fact, and any reasonable inferences that may be drawn therefrom, in plaintiff's complaint and must determine whether "under any reasonable reading of the pleadings, the plaintiff[] may be entitled to relief."  Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (citations omitted).  Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiffs' obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell

Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)."  Id. (citations omitted).  A well-pleaded complaint may proceed even if it appears "that recovery is very remote and unlikely."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  When considering a Rule 12(b)(6) motion, I do not "inquire whether the plaintiff[] will ultimately prevail, only whether [he is] entitled to offer evidence to support [his] claims."  Nami, 82 F.3d at 65, citing Scheuer, 416 U.S. at 236.

Because plaintiffs make claims of securities fraud, Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act "impose independent threshold pleading requirements that, if not met, support dismissal apart from Rule 12(b)(6)."  In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 224 (3d Cir. 2002).  Federal Rule of Civil Procedure 9(b) requires that "the circumstances constituting fraud . . . be stated with particularity."  Although courts must be sensitive to a situation in which the factual information is in the defendant's control, in securities fraud cases Rule 9(b) is to be "rigorously applied."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1417-18 (3d Cir. 1997).  The PSLRA adds an additional requirement, providing that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).

A securities fraud claim may be dismissed under Rule 9(b) and the PSLRA even if it would survive scrutiny under Rule 12(b)(6).  "Unless Plaintiffs in securities fraud actions allege facts supporting their contentions of fraud with the requisite particularity mandated by Rule 9(b) and the [PSLRA], they may not benefit from inferences flowing from vague or unspecific

8

allegations – inferences that may arguably have been justified under a traditional Rule 12(b)(6)

analysis." In re Rockefeller Ctr., 311 F.3d at 224.

DISCUSSION

Section 10(b) of the Exchange Act makes it unlawful "to use or employ, in connection

with the purchase or sale of any security registered on a national securities exchange . . . any

manipulative or deceptive device or contrivance in contravention of such rules and regulations as

the Commission may prescribe as necessary or appropriate in the public interest or for the

protection of investors."  15 U.S.C. § 78j(b).  Rule 10b-5, promulgated under Section 10(b),

provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means
> or instrumentality of intestate commerce, or of the mails or of any facility of any
> national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material
> fact necessary in order to make the statements made, in the light of the
> circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice or course of business which operates or would
> operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  To state a claim for securities fraud under Section 10(b) plaintiffs must

establish that defendants "(1) made a misstatement or an omission of a material fact (2) with

scienter (3) in connection with the purchase or sale of a security (4) upon which the plaintiff

reasonably relied and (5) that the plaintiff's reliance was the proximate cause of his or her injury."

In re IKON Office Solutions, Inc. Sec. Litig., 277 F.3d 658, 666 (3d Cir. 2002).

"Liability under section 10(b) may extend to secondary actors in the securities markets, as for example where an outside accounting firm prepares a fraudulent audit report that it knows will reach and likely influence the investing public." Id., citing Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 191 (1994) ("Any person or entity, including a lawyer, accountant, or bank . . . may be liable as a primary violator under 10b-5."); Semerenko v. Cendant Corp., 223 F.3d 165, 181 (3d Cir. 2000) (asserting that the "in connection with" prong is satisfied where the misrepresentations are material and disseminated to the public in a medium upon which a reasonable investor would rely). "However, by its terms, section 10(b) does not prohibit aiding and abetting." In re IKON, 277 F.3d at 667, citing Central Bank, 511 U.S. at 191. "To establish securities fraud, plaintiffs must establish a more exacting threshold of scienter." Id. As with the other allegations of fraud, the facts that give rise to a strong inference of scienter must be alleged with particularity, meaning that plaintiffs must plead "the who, what, where, when, and how: the first paragraph of any newspaper story." In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999).

In its present motion defendant argues that plaintiffs' class action complaint must be dismissed for three alternative reasons: (1) because I concluded that the plaintiffs failed to plead the existence of the purported fraud with the requisite factual particularity in In re American Business Financial Services, Inc. Securities Litigation, 413 F. Supp. 2d 378 (E.D. Pa. 2005) – a case closely related to the present matter  – the law of the case doctrine demands that I reach the same conclusion here; (2) plaintiffs' complaint fails to plead fraud with the requisite particularity; and (3) plaintiffs' complaint fails to plead the requisite strong inference of scienter.

I.      The Law of the Case Doctrine

Under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988). "The law of the case doctrine 'limits relitigation of an issue once it has been decided' in an earlier stage of the same litigation. [Courts] apply the doctrine with the intent that it will promote finality, consistency, and judicial economy." Hamilton v. Leavy, 322 F.3d 776, 786-87 (3d Cir. 2003), quoting In re Continental Airlines, Inc., 279 F.3d 226, 232 (3d Cir. 2002).

In its motion to dismiss defendant first argues that the law of the case doctrine applies to this action because I already have ruled on the same issues in a closely related case. Contrary to defendant's argument, the law of the case doctrine does not demand that I reach the same conclusion as my prior opinion in In re ABFS. Though the factual backgrounds of both cases are closely related, the issue decided in In re ABFS simply has no relationship to the present complaint. In In re ABFS, 413 F. Supp. 2d 378 (E.D. Pa. 2005), shareholders – specifically, common stock purchasers – alleged that ABFS, its director and three individual officers violated federal securities laws by making false and misleading statements concerning ABFS's financial performance. As I stated in that opinion, "the core of plaintiffs' claim is their allegation that defendants fraudulently altered their loan delinquency ratio by engaging in improper practices to artificially lower the number of loans that were reported as delinquent." Id. at 383-84. I concluded that the plaintiffs in In re ABFS failed to plead the existence of the purported fraud with the requisite factual particularity. Id. at 403.

The narrow issue decided and the conclusion that defendant would have me apply to this

11

case was that the shareholder plaintiffs in In re ABFS failed to plead the existence of fraud with the requisite particularity in their complaint against a corporation, its director and three officers. Yet this determination has no relevance to the case facing me now, which involves a new and different class action complaint brought by a new and different putative class of plaintiffs – noteholders of ABFS, not shareholders – against a new and different defendant – the auditor, not the corporation, its director or officers.  I refuse to conclude – nor could I – that present plaintiffs fail to plead fraud with the requisite particularity without engaging in a thorough analysis of their complaint.  Therefore I conclude that the law of the case doctrine does not apply.

II.     Alleged Fraud and Scienter

In order to satisfy Rule 9(b) plaintiffs must plead with particularity "the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984) (internal quotation marks omitted).  Plaintiffs may satisfy this requirement either by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  Id. (holding that a plaintiff satisfied Rule 9(b) by pleading which machines were the subject of alleged fraudulent transactions and the nature and subject of the alleged misrepresentations).

The Court of Appeals has noted that "[a]t the pleading stage, courts have recognized that allegations of GAAS violations, coupled with allegations that significant 'red flags' were ignored, can suffice to withstand a motion to dismiss."  In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 280 (3d Cir. 2006) (citing cases).  However, "[s]uch allegations . . . must be

pled with particularity.  It is insufficient, for example, for a plaintiff to cite GAAS standards
without an explanation of how the defendant knowingly or recklessly violated those standards."
Id. (citations omitted); cf. Payne v. DeLuca, 433 F. Supp. 2d 547, 580 (W.D. Pa. 2006) ("While
violations of GAAP standards may provide evidence of scienter, the complaint must describe the
violations with sufficient particularity, e.g., the approximate amount by which revenues and
earnings were overstated, the transactions involved, the identities of customers or employees
involved in the transactions."), citing Greebel v. FTP Software, Inc., 194 F.3d 185, 203 (1st Cir.
1999).  "[P]laintiffs bear the burden of 'plead[ing] factual allegations, not hypotheticals,
sufficient to reasonably allow the inference' that the forecast was made with either (1) an
inadequate consideration of the available data or (2) the use of unsound forecasting
methodology."  In re Burlington Coat Factory, 114 F.3d at 1429, quoting Glassman v.
Computervision Corp., 90 F.3d 617, 628-29 (1st Cir. 1996).

"Allegations of GAAP violations or accounting irregularities, standing alone, are
insufficient to state a securities fraud claim . . . . [O]nly where such allegations are coupled with
evidence of corresponding fraudulent intent might they suffice."  In re Exxon Mobil Corp. Sec.
Litig., 387 F. Supp. 2d 407, 426 (D.N.J. 2005).  That is, plaintiffs must demonstrate that
defendant possessed "a mental state embracing intent to deceive, manipulate or defraud, or, at a
minimum, highly unreasonable (conduct), involving not merely simple, or even inexcusable
negligence, but an extreme departure from the standards of ordinary care . . . which presents a
danger of misleading buyers or sellers that is either known to the defendant or is so obvious that
the actor must have been aware of it."  In re IKON, 277 F.3d at 667, quoting Ernst & Ernst v.
Hochfelder, 425 U.S. 185, 193 n.12 (1976); SEC v. Infinity Group Co., 212 F.3d 180, 192 (3d

Cir. 2000) (citations and internal quotation marks omitted).  A plaintiff may establish scienter "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  In re Burlington Coat Factory, 114 F.3d at 1418.

Where an auditor is charged with securities fraud the Court of Appeals has stated, "A showing that an auditor either lacked a genuine belief that its representations were supported by adequate information or engaged in auditing practices so shoddy that they amounted at best to a 'pretended audit' has traditionally supported a finding of liability, even in the face of assertions of good faith."  In re Suprema Specialties, 438 F.3d at 279, citing McLean, 599 F.2d at 1198. "[I]n many cases the most plausible means to prevail on a section 10(b) claim against an auditor without that ever-elusive 'smoking gun' document or admission will be to show how specific and not insignificant accounting violations collectively raise an inference of scienter."  In re IKON, 277 F.3d at 677 n.26.  However, "the mere second-guessing of calculations will not suffice; appellants must show that [the auditor]'s judgment at the moment exercised was sufficiently egregious such that a reasonable accountant reviewing the facts and figures should have concluded that [the company]'s financial statements were misstated and that as a result the public was likely to be misled."  Id. at 673.

Plaintiffs complaint identifies as materially false or misleading BDO's unqualified audit opinions for ABFS's 2001, 2002 and 2003 fiscal years and ABFS's 2000 income statement, which were included in two Registration Statements of ABFS that became effective on October 3, 2002 and November 7, 2003.  Plaintiffs allege that in issuing unqualified audit opinions BDO failed to comply with specific GAAS standards including, inter alia: the requirement to exercise

14

due professional care and professional skepticism; the requirement to diligently perform, in good

faith, and with integrity, the gathering and objective evaluation of evidence; the requirement

neither to assume that management is dishonest nor to assume unquestioned honesty; the

requirement to conduct an audit recognizing the possibility of material misstatement due to fraud

regardless of past experience with the company and the auditor's belief about management's

honesty and integrity; the requirement to be without bias with respect to the client; the

requirement to be intellectually honest and recognized as independent from the client; the

requirement to consider audit risk and materiality in planning the audit, designing the audit

procedure and evaluating whether the financial statements as a whole were presented fairly; the

requirement to obtain sufficient competent evidence; the requirement to consider using the work

of a specialist; the requirement to investigate contradictions between the representations of

management and the audit evidence; and the requirement to obtain an understanding of the

client's internal controls.

Defendant presently argues that plaintiffs' complaint is defective because, though it

alleges that defendant violated the numerous specific GAAS standards stated above, it fails to

explain or plead facts with sufficient particularity how defendant knowingly or recklessly

violated those standards.[2]  However, I conclude that plaintiffs' complaint pleads with sufficient

particularity the presence of significant red flags that defendant either knowingly or recklessly

---

[2]Defendant asserts that plaintiffs' complaint fails to allege, inter alia: (1) the amount of
the alleged misstatement; (2) where within these reports the alleged misstatement occurred; (3)
the specific effect of any alleged misstatement on ABFS's financial statements; (4) an
explanation as to how the delinquency and discount rates were improper aside from their
departure from industry norms; (5) what the delinquency and discount rates should have been;
and (6) the number of accounts with alleged forbearance and deferment agreements.

disregarded in producing its unqualified audit opinions during the class period.  These alleged red flags, set forth above, raise questions about the integrity of ABFS's financial statements and BDO's audits such that defendant's repeated failures to investigate further are sufficiently egregious to infer scienter.  Defendant's failures, along with a financial incentive to acquiesce to ABFS, constitute strong circumstantial evidence of conscious misbehavior or recklessness.  Moreover, these red flags were present at the time of BDO's audit; therefore plaintiffs allege more than second-guessing or fraud by hindsight.

At this stage of the litigation I have no opinion as to whether plaintiffs' claim will survive a post-discovery summary judgment motion.  Yet plaintiffs are entitled to the benefit of all reasonable inferences based on the specific allegations in their complaint.  Upon consideration of plaintiffs' allegations of numerous, significant and specific auditing violations and repeated decisions not to investigate multiple red flags, I will deny defendant's motion to dismiss on the ground that plaintiffs' complaint fails to plead fraud or scienter with requisite particularity.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re AMERICAN BUSINESS FINANCIAL SERVICES, INC. NOTEHOLDERS LITIGATION | : | MASTER FILE NO. 05-0232 |
| | : | |
| | : | |
| | : | |
| | : | |
| JOHN A. MALACK; MICHAEL R. ROSATI; VIRGIL MAGNON; S.S. RAJARAM M.D.; HAYWARD PEDIATRICS, INC.; AND HENRY MUNSTER | : | CASE NO. 08-0784 |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| BDO SEIDMAN, LLP | : | |

ORDER

AND NOW, this 11th day of August 2008, upon consideration of defendant's motion to dismiss plaintiffs' class action complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiffs' response, and defendant's reply, and for the reasons set forth in the accompanying memorandum, it is ORDERED that defendant's motion is DENIED.

*/s/ Thomas N. O'Neill, Jr.*

_____
THOMAS N. O'NEILL, JR., J.